AUSTIN O. ALLEN, ESQ.
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB No. 10076*
aoa@hasattorneys.com

Attorney for Plaintiff Rebecca Steingruber.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA STEINGRUBER,<br><br>                    Plaintiff,<br><br>v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>                    Defendant. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: _____ |

Plaintiff, Rebecca Steingruber, by and through her counsel, HALL ANGELL & ASSOCIATES, LLP, and as a cause of action against Battelle Energy Alliance, LLC, a Limited Liability Company formed under the laws of the State of Delaware licensed to do business as a foreign limited liability company in the State of Idaho, alleges and states as follows:

**JURISDICTION AND VENUE**

1.  This action is brought under the laws of the United States and the state of Idaho, including but not limited to the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*, Title VII of the Civil Rights Act of 1964, the Family Medical Leave Act, the Idaho Human Rights Act, and the common law of the United States and the state of Idaho.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 1367l and 42 U.S.C. § 12117.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district. Venue in this district is proper pursuant to 42 U.S.C. § 12117 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Rebecca Steingruber ("Ms. Steingruber") is a female citizen of the United States of America, who resides in Salt Lake City, Utah. At all times relevant hereto, Ms. Steingruber was a resident of the city of Idaho Falls, Idaho.

5. Defendant Battelle Energy Alliance, LLC, ("BEA") is a limited liability company formed under the laws of the state of Delaware. BEA is licensed to operate as a foreign limited liability company under the laws of the state of Idaho, and its principal place of business is in Idaho Falls, Idaho.

6. At all times relevant hereto, BEA operated the Idaho National Laboratory ("INL") near Idaho Falls, Idaho, where it performed government contract work for the US Department of Energy.

7. At all times material hereto, BEA regularly employed fifteen or more persons, and was engaged in an industry affecting commerce, bringing BEA within the ambit of 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 12111.

## FACTS COMMON TO ALL COUNTS

8. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 7 above, as though fully incorporated herein.

9. Ms. Steingruber was hired at BEA for its Idaho Falls office as a network system administrator in November of 2007, and was subsequently promoted to Information System Security Officer ("ISSO") in 2010.

10. Ms. Steingruber's job duties with BEA were varied, having been appointed the Primary DOE IN ISSO, the Primary Communications Security ("COMSEC") custodian, and the Primary Control Officer for a Compartmented Access Program. These roles within BEA are imperative, important positions that Ms. Steingruber carried out without incident.

11. Throughout her work history, Ms. Steingruber consistently received positive reviews for her work, and was regularly merit eligible. In ten years, Ms. Steingruber only once received a Performance Improvement Plan ("PIP"), which she received in or around 2015. The 2015 PIP was ultimately rescinded, and since then she remained merit eligible until her untimely termination in 2018.

12. Throughout her employment, Ms. Steingruber experienced hostile and discriminatory actions against her by various BEA employees, including her supervisor, Franci Szabo.

13. BEA operates a department of Employee Concerns. Employees for BEA are directed to take reports of discrimination, retaliation, or other concerns to the Employee Concerns department.

14. On or about December 18, 2015, Ms. Steingruber contacted members of Employee Concerns regarding her PIP and interactions with BEA employees.

15. On or about December 21, 2015, Ms. Steingruber received an email from Ms. Szabo reprimanding Ms. Steingruber for contacting Employee Concerns, informing her that

future contact with Employee Concerns would result in disciplinary action up to and including termination.

16. As a result of Ms. Szabo's reprimand, Ms. Steingruber's willingness to report concerns, personal needs, or acts of discrimination to BEA was chilled out of fear of retaliation.

17. From late 2015 to approximately April of 2016, Ms. Steingruber was the victim of numerous sexually-discriminatory comments made by members of her team, including Ms. Szabo, concerning her pregnancy.

18. In or around 2015, Ms. Steingruber made the personal, intimate decision to seek to become a mother by way of *in vitro* fertilization. While she was pregnant during late 2015 through 2016, Ms. Steingruber was subjected to jeering and derisive comments from BEA employees relating to her decision to become pregnant. Among those commenters was Ms. Szabo, who made her distaste for Ms. Steingruber's rightful and personal decision known to her. Ms. Steingruber noticed that Ms. Szabo's treatment of her deteriorated after having elected to bear a child, and that the work relationship broke down until Ms. Szabo had Ms. Steingruber terminated on February 19, 2018.

19. Other BEA employees made similarly hostile and discriminatory comments directed at Ms. Steingruber during her pregnancy.

20. Daniel Parr, an Alternate SSO for BEA, repeatedly asked Ms. Steingruber who the child's father was despite her informing him every time that there was no father and that she elected to conceive *in vitro*. Mr. Parr also made jeering comments to Ms. Steingruber that "we" (either meaning him or the department) needed to get Ms. Steingruber married. These comments were intended to discourage Ms. Steingruber's pregnancy decisions and disparage her for raising

a child without a spouse. Such comments were not made by any BEA employees to male employees concerning their own or their partners' pregnancy decisions.

21. During Ms. Steingruber's pregnancy, Cindy Garner, an ISSM officer for BEA, repeatedly commented to or around Ms. Steingruber that *in vitro* was "the only way [Ms. Steingruber] could have kids". Ms. Garner intended this statement to mean Ms. Steingruber was incapable of securing a partner. Ms. Garner also began spreading an inappropriate and offensive rumor that Russell Marsh, CIO for BEA, was the real father of Ms. Steingruber's child. This rumor was baseless, untrue, disparaging, and hostile. Ms. Garner did not make comments similar to these toward male employees at BEA.

22. The comments and discriminatory actions against Ms. Steingruber concerning her pregnancy and her decision to raise her child as a single mother persisted until her termination on February 19, 2018.

23. BEA did nothing to stop, cull, or address the discriminatory comments and actions directed against Ms. Steingruber on the basis of her pregnancy decisions or her gender.

24. In or around Autumn of 2017, Ms. Steingruber suffered an injury to her knee which required surgery.

25. From November 13, 2017, until February 1, 2018, Ms. Steingruber took approved medical leave under the Family Medical Leave Act ("FMLA") for knee surgery. This was approved FMLA leave to which Ms. Steingruber was eligible and entitled, and she took no additional leave beyond that which was approved by BEA.

26. Prior to her return from FMLA leave, BEA informed Ms. Steingruber that she would not be restored to the position she held when she first went on FMLA leave. BEA informed Ms. Steingruber that (1) she would return to work as an Alternate for the Primary

Network she had been the Primary ISSO for since 2010, (2) be reassigned as the Primary ISSO for standalone systems, (3) that she would be removed as primary or secondary custodian for COMSEC where she had been the Primary Custodian since appointment, and (4) that she would be completely removed from her Sub Compartment Control Officer duties.

27. The change from ISSO (a team lead position) to Alternate ISSO was a substantial change in duties, responsibilities, and classifications, and Ms. Steingruber was stripped of responsibilities and her Control Officer status rather than restored to her original position.

28. To perform job duties for the Alternate ISSO position, Ms. Steingruber was required to be "read-in" to her responsibilities. BEA refused to permit Ms. Steingruber to read-in. Ms. Steingruber was thus placed into a position she could not perform upon her return from FMLA leave.

29. After returning from FMLA leave, in or around February 2018, Ms. Szabo gave Ms. Steingruber her Annual Performance Review for 2017. Ms. Szabo wrote on Ms. Steingruber's Annual Review that she needed to better manage all of her company leave. This was inconsistent with the fact that Ms. Steingruber had only taken leave that she was entitled to under FMLA. A written annual review was ultimately placed in Ms. Steingruber's personnel file, which included Ms. Szabo's reprimand regarding personal leave.

30. Ms. Steingruber's ability to perform day-to-day life functions, including her job functions, was impacted by her knee surgery. Ms. Steingruber was ordered by her doctor to allow her knee to heal and rehabilitate, to wear a knee brace for a period of several weeks, and to refrain from using stairs, crouching, kneeling, or standing for extended periods of time.

31. Per her doctor's orders, Ms. Steingruber was qualified and able to perform the essential functions of her job with reasonable accommodation.

32. In or around January of 2018, Ms. Steingruber spoke with Mike Lusk, ISSM Team Lead for BEA, concerning the condition of her knee post-surgery. Ms. Steingruber requested the reasonable accommodation she be allowed to work in her knee brace and to avoid tasks requiring her to crouch, get on her knees, or climb stairs until her knee had recovered from surgery.

33. In or around January of 2018, Ms. Steingruber spoke with Ms. Szabo concerning her ability to perform job duties while recovering from surgery. Ms. Steingruber requested reasonable accommodation to assist in her ability to get to and around the workplace.

34. Upon Ms. Steingruber's return from FMLA leave on or around February 2, 2018, the only accommodation BEA made for Ms. Steingruber was to allow her limited access to a malfunctioning scooter, which could not hold a sufficient charge to allow her to operate effectively around the office and perform her job duties. BEA also did not permit Ms. Steingruber to use the scooter anywhere but the second floor of the office building, requiring her to walk, stand, kneel, and use stairs contrary to her medical limitations and requests for accommodation.

35. Ms. Steingruber was given no other accommodations from BEA. BEA did not engage in any further discussions with Ms. Steingruber to provide a reasonable accommodation.

36. Ms. Steingruber was chilled from reporting her concerns regarding BEA and its employees' treatment of her regarding her pregnancy, her FMLA leave, or her disability and requests for reasonable accommodation due to her fear of retaliation caused by Ms. Szabo's previous reprimands.

37. On February 19, 2018, Ms. Steingruber was suddenly and unceremoniously terminated from her position. Ms. Szabo met with Ms. Steingruber and informed her that her

position was terminated immediately, and requested that she return company items and be escorted out of the building.

38. Ms. Steingruber has made multiple requests for an explanation for her termination, and the only reason she received from BEA was that it was "due to performance."

39. Following her termination, Ms. Steingruber attempted to apply for other positions within BEA, only to be immediately turned down for the position despite her qualifications.

40. In or around March of 2018, while Ms. Steingruber applied for insurance, Idaho Health and Welfare informed Ms. Steingruber that BEA/INL reported that she was terminated due to a history of behavioral issues. This was inconsistent with the reasoning provided to her by BEA/INL.

41. On or about April 6, 2018, Ms. Steingruber obtained legal counsel and sent a letter to BEA concerning her termination and identifying the issues identified in this Complaint.

42. In response, BEA provided Ms. Steingruber and her legal counsel with Ms. Steingruber's Employee Relations File spanning from the year 2012 to 2018.

43. Included in Ms. Steingruber's file was a written report prepared by a PAAG (as referred to by BEA, but heretofore undefined) which documented the reasoning behind Ms. Steingruber's termination, which was shared by the following employees for BEA and/or INL: Kimberly Evans-Ross (General Counsel for INL); William Kiestler (BEA management); Chad Landon (BEA management); Cresta Fillmore (BEA Insurance and Risk Management Specialist); Anne-Marie Waggoner-Gilmore (BEA); Toni Vandel (INL/BEA HR consultant); Dr. Martin Mangan (INL Occupational Medical Program); and Jennifer Bowman (BEA FMLA Benefits Representative).

44. The PAAG report made numerous inaccurate claims regarding Ms. Steingruber's behavior at BEA. Additionally, throughout the written report, several instances of complaints concerning Ms. Steingruber's approved use of FMLA leave and maternity leave are raised.

45. The PAAG report ended with a bullet-point list of reasons for Ms. Steingruber's termination. Two listed reasons at the top of the list were for "unexpected absences" relating to her pregnancy and knee surgery, and for alleged "misuse of company leave" related to her exercise of FMLA leave.

46. Due to BEA's actions, Ms. Steingruber has lost classifications allowing her to obtain work with comparable responsibilities, compensation, and benefits as her Primary ISSO position she held when she first took FMLA leave.

47. The loss of Ms. Steingruber's position and classifications has forced Ms. Steingruber to sell her home and move herself and her daughter to another state to seek employment.

48. Due to the acts of BEA and its employees, Ms. Steingruber has suffered severe damages – financially, emotionally, and medically – which would not have occurred but for BEA's and its employees' unlawful and discriminatory acts.

49. On or about May 8, 2018, Ms. Steingruber filed a Charge of Discrimination with the US Equal Employment Opportunity Commission, which was dually filed with the Idaho Human Rights Commission.

50. Ms. Steingruber received a Notice of Right to Sue from the Idaho Human Rights Commission on or about May 29, 2020. Ms. Steingruber has exhausted her administrative remedies.

51. Ms. Steingruber has filed this Complaint within ninety (90) days after receipt of her Notice of Right to Sue from the IHRC.

## COUNT I
### (Discrimination in Violation of the Americans with Disabilities Act Amendments Act)

52. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 51 above, as though fully incorporated herein.

53. At all times relevant hereto, Ms. Steingruber had a disability as defined by the ADAAA because she suffered from an actual disability.

54. At all times relevant hereto, BEA perceived Ms. Steingruber as being disabled and/or Defendant knew Ms. Steingruber had a disability and BEA had a record of such disability.

55. The disability BEA knew or perceived Ms. Steingruber to have was an impairment to her knee.

56. Ms. Steingruber has a record of knee impairment and an actual knee impairment due to her surgery.

57. Ms. Steingruber was a qualified individual under the ADAAA, *i.e.*, an individual who, with or without reasonable accommodation, could perform the essential function of the position she held.

58. BEA took adverse employment action against Ms. Steingruber based upon her actual, perceived, and/or record of disability by refusing to provide Ms. Steingruber a reasonable accommodation, by demoting her position from ISSO to Alternate ISSO, and by terminating her employment.

59. As a direct and proximate result of BEA's actions and/or failures to act, Ms. Steingruber has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination she suffered at the hands of BEA. Further,

Ms. Steingruber has suffered a loss of earnings and other employment-based job opportunities, as well as incurred expenses due to her being forced to sell her house and move to a different state to seek similar employment. Ms. Steingruber is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to her.

60. BEA's conduct was malicious and oppressive, and done with reckless disregard for Ms. Steingruber's federally protected rights for which Ms. Steingruber is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT II
**(Retaliation in Violation of the Americans with Disabilities Act Amendments Act)**

61. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 60 above, as though fully incorporated herein.

62. Ms. Steingruber engaged in a protected activity by reporting her injury and need for reasonable accommodation associated with her disability.

63. BEA subjected Ms. Steingruber to adverse employment actions subsequent to Ms. Steingruber's engaging in a protected activity, including demoting Ms. Steingruber from an ISSO to Alternate ISSO, and terminating her employment.

64. Such adverse employment actions constitute retaliation against Ms. Steingruber for engaging in a protected activity.

65. As a direct and proximate result of BEA's actions and/or failures to act, Ms. Steingruber has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination she suffered at the hands of BEA. Further, Ms. Steingruber has suffered a loss of earnings and other employment-based job opportunities, as well as incurred expenses due to her being forced to sell her house and move to a different

state to seek similar employment. Ms. Steingruber is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to her.

66. BEA's conduct was malicious and oppressive, and done with reckless disregard for Ms. Steingruber's federally protected rights for which Ms. Steingruber is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT III
### (Interference with FMLA Rights)

67. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 66 above, as though fully incorporated herein.

68. Ms. Steingruber was eligible for FMLA protections.

69. BEA was an employer covered by the FMLA.

70. Ms. Steingruber was entitled to leave under the FMLA.

71. Ms. Steingruber provided sufficient notice of her intent to take FMLA leave.

72. Ms. Steingruber was entitled to 12 weeks of protected leave under the FMLA and to be placed in her original position as ISSO upon her return from FMLA leave.

73. BEA denied Ms. Steingruber the benefits to which she was entitled under the FMLA by not returning Ms. Steingruber to her position as ISSO, instead demoting Ms. Steingruber to Alternate ISSO, and by terminating her employment on the basis of her having taken FMLA leave.

74. Based on the foregoing, BEA interfered with Ms. Steingruber's rights under the FMLA.

75. As a direct and proximate result of BEA's actions and/or failures to act, Ms. Steingruber has suffered and will continue to suffer a loss of earnings, employment benefits,

clearances, and job opportunities. Ms. Steingruber is thereby entitled to general damages, such amount to be proven at trial, plus interest, as well as any other equitable remedies available to her.

76. BEA's actions and/or failures to act were committed in bad faith, for which Ms. Steingruber is entitled to liquidated damages pursuant to 29 U.S.C. § 626(b).

## COUNT IV
### (Retaliation in Violation of the FMLA)

77. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 76 above, as though fully incorporated herein.

78. Ms. Steingruber engaged in a protected activity by applying for entitled leave under the FMLA and by inquiring into unlawful BEA's act of placing Ms. Steingruber in a lesser Alternate ISSO position than her original ISSO position while on FMLA leave.

79. BEA took adverse employment actions against Ms. Steingruber by terminating her employment.

80. BEA took such adverse employment action against Ms. Steingruber due to her engagement in the protected activities of applying for FMLA leave and inquiring BEA's unlawful practices under the FMLA.

81. As a direct and proximate result of BEA's actions and/or failures to act, Ms. Steingruber has suffered and will continue to suffer a loss of earnings, employment benefits, clearances, and job opportunities. Ms. Steingruber is thereby entitled to general damages, such amount to be proven at trial, plus interest, as well as any other equitable remedies available to her.

82. BEA's actions and/or failures to act were committed in bad faith, for which Ms. Steingruber is entitled to liquidated damages pursuant to 29 U.S.C. § 626(b).

## COUNT V
## (Discrimination in Violation of Title VII of the Civil Rights Act of 1964)

83. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 82 above, as though fully incorporated herein.

84. Ms. Steingruber was a member of a protected class on the basis of her gender, and suffered discrimination on the basis of her gender and pregnancy status.

85. BEA and/or its employees engaged in intentional gender discrimination in the terms and conditions of Plaintiff's employment, including, but not limited to, the termination of her employment.

86. BEA, through its agents and employees, inappropriately questioned Ms. Steingruber about her pregnancy status throughout her pregnancy and discriminated against her on the basis of her pregnancy decisions in violation of federal law.

87. BEA, through its agents and employees, impermissibly used Ms. Steingruber's pregnancy status as a negative factor in the decision to terminate her employment in violation of federal law.

88. BEA again discriminated against Ms. Steingruber on the basis of her gender when it denied her application for another position with BEA because it based its decision on "performance and behavioral issues", which referred to Ms. Steingruber's exercise of entitled leave for maternity care and pregnancy issues.

89. BEA's discriminatory conduct, in violation of Title VII, has caused Ms. Steingruber to suffer a loss of pay, benefits, and other emoluments of employment.

90. BEA's actions have caused Ms. Steingruber to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

91. BEA has engaged in discriminatory practices with malice and reckless indifference to Ms. Steingruber's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT VI
**(Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964)**

92. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 91 above, as though fully incorporated herein.

93. BEA, by and through its supervisors and employees, intentionally subjected Ms. Steingruber to unequal and discriminatory treatment by subjecting her to a hostile work environment, sexual harassment, and by failing to provide Ms. Steingruber an avenue to report and address the hostile work environment without fear of retaliation.

94. BEA has engaged in a policy, pattern, and/or practice of hostility toward Ms. Steingruber. BEA has allowed its supervisor, Franci Szabo, to act with hostility toward Ms. Steingruber by making inappropriate, disparaging, and sexually-discriminatory comments relating to Ms. Steingruber's pregnancy and using Ms. Steingruber's pregnancy as a negative factor in adverse employment actions.

95. BEA allowed its employees, Daniel Parr and Cindy Garner, to act with hostility towards Ms. Steingruber by making inappropriate, disparaging, and sexually-discriminatory comments relating to Ms. Steingruber's pregnancy and relationship status.

96. BEA's and its employees' actions amounted to a hostile work environment which persisted up to Ms. Steingruber's termination.

97. As a direct and proximate result of the hostile work environment Ms. Steingruber was forced to work under, as well as BEA's policy, pattern, and/or practice of hostility, BEA has violated tilte VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.

98. BEA's actions as described within this Complaint have caused Ms. Steingruber great mental anguish, lamentation, humiliation, degradation, loss of enjoyment of life, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other damages.

99. BEA's conduct was malicious and oppressive, and done with reckless disregard for Ms. Steingruber's federally protected rights for which Ms. Steingruber is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

### COUNT VII
### (Wrongful Termination in Contravention of Public Policy)

100. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 99 above, as though fully incorporated herein.

101. Ms. Steingruber engaged in protected activity when she requested reasonable accommodations and inquired into unlawful acts concerning BEA's placement of Ms. Steingruber into an Alternate ISSO position.

102. Ms. Steingruber's engagement in a protected activity was a motivating factor in BEA's decision to terminate Ms. Steingruber.

103. BEA violated the public policy of the state of Idaho by its retaliatory actions.

104. As a direct and proximate result of BEA's actions and/or failures to act, Ms. Steingruber has suffered and will continue to suffer a loss of earnings and other employment-based job opportunities. Ms. Steingruber is thereby entitled to damages, such amount to be proven at trial, as well as other equitable remedies available to her.

### COUNT VIII
### (Intentional Infliction of Emotional Distress)

105. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 104 above, as though fully incorporated herein.

106. BEA and its employees intentionally and/or recklessly acted in an extreme and outrageous fashion in its treatment of Ms. Steingruber.

107. As a direct and/or proximate result of BEA's actions, Ms. Steingruber suffered, and still suffers, severe emotional distress.

108. Ms. Steingruber's severe emotional distress suffered at the hands of BEA and its employees has physically manifested in several forms, including but not limited to lack of sleep, severe anxiety, depression, and post-traumatic stress responses that severely affect her day-to-day functions.

109. The severe emotional distress Ms. Steingruber has suffered and continues to suffer has caused damage to Ms. Steingruber , all in amounts to be proven at trial.

## COUNT IX
### (Negligent Infliction of Emotional Distress)

110. Ms. Steingruber realleges and incorporates by reference paragraphs 1 through 109 above, as though fully incorporated herein.

111. At all times relevant to this Complaint, BEA had a duty recognized by law requiring it to conform to a certain standard of conduct in its treatment of Ms. Steingruber.

112. BEA breached its duty owed to Ms. Steingruber by subjecting her to the comments, environment, and adverse employment actions described within this Complaint.

113. As a direct and/or proximate result of BEA's actions, Ms. Steingruber suffered, and still suffers, severe emotional distress.

114. Ms. Steingruber's severe emotional distress suffered at the hands of BEA and its employees has physically manifested in several forms, including but not limited to lack of sleep,

severe anxiety, depression, and post-traumatic stress responses that severely affect her day-to-day functions.

115. The severe emotional distress Ms. Steingruber has suffered and continues to suffer has caused damage to Ms. Steingruber, all in amounts to be proven at trial.

## ATTORNEYS' FEES

As a further direct and proximate result of BEA's actions or omissions, Ms. Steingruber has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, costs and fees, including attorneys' fees, which BEA should be required to pay under Idaho Code §§ 12-117, 12-121, 29 U.S.C. § 2617(a)(3), and 42 U.S.C. § 2000e-5.

## DEMAND FOR JURY TRIAL

Ms. Steingruber demands trial by jury to all issues in this action triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Steingruber seeks judgment against BEA as follows:

1. For compensatory and general damages in an amount as shall be proven at trial, including any equitable remedies, including front pay, available to Plaintiff;
2. For punitive damages where available;
3. For attorneys' fees pursuant to statute and for the costs of this lawsuit;
4. For prejudgment interest on all amounts claimed; and
5. For such other and further relief as this Court deems just and proper.

DATED this 25th day of August, 2020.

/s/
AUSTIN O. ALLEN
Hall Angell & Associates, LLP